UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 5:18-063-JMH-MAS-2 |
| v. | ) | and |
| | ) | Civil Action No. |
| TEDDY S. HAWKINS, | ) | 5:20-481-JMH-MAS |
| | ) | |
| Defendant/Petitioner. | ) | |
| | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on referral from Senior District Judge Joseph M. Hood to prepare a Report and Recommendation on Defendant/Petitioner Teddy S. Hawkins's ("Hawkins") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. [DE 217 and 230]. Hawkins alleges his counsel was ineffective, the United States engaged in prosecutorial misconduct, the Court committed Rule 11 violations, his sentence was improper, and there was law enforcement misconduct during the investigation and arrest, including violations of his Fourth Amendment rights. The United States responded in opposition [DE 226], and Hawkins filed a reply [DE 228]. Hawkins also requests counsel be appointed to assist him in pursuing his § 2255 motion. After reviewing the record in its entirety, the Court recommends Hawkins's motion be denied for the reasons stated below, and further finds an evidentiary hearing is unnecessary.

**I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On August 2, 2018, a grand jury returned a Superseding Indictment against Hawkins and two co-defendants on numerous narcotics and firearms charges, with a related conspiracy to

1

distribute fentanyl charge. [DE 29; Original Indictment at DE 13; Complaint with Affidavit in Support at DE 1]. Hawkins was charged in only one count of possession with intent to distribute fentanyl, and he was not charged in any counts with his codefendants other than the conspiracy count.

The charges arose out of an overdose death in May 2018. The decedent had a co-defendant's, Robert McGowan ("McGowan"), phone number saved in his cell phone as his narcotics supplier. Officers eventually arrested McGowan, who agreed to cooperate with them. McGowan stated Hawkins supplied him with heroin, including the heroin that he sold to the decedent. McGowan, acting as an informant, set up a controlled buy with Hawkins. When law enforcement officers approached Hawkins at the site of the narcotics transaction McGowan arranged, Hawkins fled on foot. He tossed a firearm on the ground as he fled. Law enforcement officers apprehended him at the scene and searched his person. They located suspected heroin and/or fentanyl in his buttocks.[1]

As the case progressed towards trial, the United States dismissed the conspiracy charge against all three defendants, acknowledging that it was "in the interest of justice to proceed to trial against the defendants on their separate substantive offenses only." [DE 98 at Page ID # 584].

Hawkins's original trial counsel, Andrew M. Stephens, filed a motion to suppress challenging the warrantless stop and arrest of Hawkins. [DE 64]. On December 10, 2018, the day before Hawkins's jury trial was scheduled to commence, Mr. Stephens was forced—through no fault of his own—to move to withdraw from the case. The reasons for his withdrawal are reflected in his sealed motion at DE 107. Judge Hood granted Mr. Stephens's motion to withdraw and

---

[1] These facts are set forth in the Complaint [DE 1], Affiant Special Agent Jason Moore's testimony at the preliminary hearing [DE 9; Transcript at DE 92], and in the Plea Agreement [DE 147].

appointed Thomas Lyons to represent Hawkins going forward.  The Court severed Hawkins from McGowan for trial (the third codefendant had already plead guilty) and requested Mr. Lyons file a status report with the Court "as soon as possible and advise the Court when he is ready to proceed on the pending Motion to Suppress (DE #64) and as to when he is ready to proceed to trial."  [DE 110].  Soon thereafter, Mr. Lyons obtained the discovery in the case, filed a reply supplementing the pending Motion to Suppress originally filed by Mr. Stephens.  After a suppression hearing, the District Court issued a thorough Memorandum Opinion and Order denying Hawkins's motion to suppress on January 25, 2019.  [DE 134].

On February 21, 2019, Hawkins pleaded guilty to one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), pursuant to a written plea agreement.  [DE 148].

Judge Hood sentenced Hawkins on May 30, 2019, to a total of 106 months imprisonment with a total of six years of supervised release to follow.  [DE 176 and 177].  The Sixth Circuit affirmed the District Court's judgment on January 31, 2020.  [DE 196].

Hawkins then timely filed the present Motion to Vacate, Set Aside, or Correct a Sentence on December 1, 2020.  [DE 217].  Hawkins filed a "Motion to Add Ground #7" on January 22, 2021, and a Motion to Amend his § 2255 Motion on September 30, 2021.  [DE 227 and DE 230]. The Court will recommend the District Court grant the Motion to Add Ground #7 [DE 227] because it was filed within Hawkins's one-year statute of limitations.  Though the United States has not had an opportunity to respond to this seventh ground for relief, the Court finds that it is procedurally barred, and, thus, a response is unnecessary.

The Court recommends, somewhat reluctantly, that the District Court grant Hawkins' Motion to Amend his § 2255 Motion. The Court notes that Hawkins had an opportunity to file a reply to the United States' Response, and he took that opportunity. [DE 228]. If Hawkins had additional information in support of his § 2255 motion, that was the appropriate time and place to do it. The Court already permitted Hawkins to file a significantly oversized brief with his original § 2255 motion and add a claim to that motion. [DE 220]. His Motion to Amend is another 91 pages with 97 pages of exhibits. Hawkins has had his proverbial bite at the apple; it is within the Court's discretion to deny his untimely and futile Motion to Amend[2] and decide his claims on his original motion (including the seventh ground for relief later added). Nonetheless, because it appears his amended petition is nearly identical to his original motion—but for the addition of numerous facts and arguments to his seventh ground for relief—the Court finds it "relates back" to his original timely filings pursuant to FED. R. CIV. P. 15(c). Once again, the Court finds that a response from the United States is not necessary, because the amended ground for relief is procedurally barred.

## II.  ANALYSIS

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege

---

[2] Section 2255 provides in relevant part: "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of (1) the date on which the judgment becomes final[.]" Hawkins's Judgment became final when his time to file a writ of certiorari to the Supreme Court expired on April 30, 2020. *See* Sixth Circuit Judgment dated January 31, 2020 at DE 196; *See also Clay v. United States*, 537 U.S. 522, 532 (2003) ("for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires.").

as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

Hawkins asserts the following claims for relief: ineffective assistance of counsel based on both trial counsel's alleged failure to investigate and challenge a Fourth Amendment violation, "discovery violations," "allowing" Hawkins to plead guilty to the § 924(c) charge without a sufficient factual basis, failing to object to the Court's statements at sentencing. Hawkins also makes the following claims outside the umbrella of ineffective assistance of counsel: law enforcement misconduct, a Fourth Amendment violation, and the sentence imposed was procedurally unreasonable.[3] Though Hawkins makes numerous claims for relief, most share a common theme: Hawkins argues that the circumstances that led to his arrest were unlawful and

---

[3] In his reply, Hawkins admits that he "has no procedural right to challenge his sentence imposed by the court, ground #3, and the Defendant agrees with the Government and states that his ground #3 argument for improper sentencing was not presented correctly and is moot." [DE 228 at Page 1362]. In his later-filed amended § 2255 motion, however, Hawkins lists ground #3, challenging his sentence, and supports that ground for relief with facts and argument. Thus, while the Court believes Hawkins may have intended to abandon that claim, the Court will address it because the Court has recommended that the amended motion be allowed to go forward.

unsupported by probable cause. This is, essentially, the same issue addressed, argued, and appealed in his suppression motion. Hawkins also spends dozens of pages in his brief explaining, essentially, that he was not in a conspiracy with McGowan and that he did not sell the drugs to McGowan that resulted in the overdose death. The United States dismissed the conspiracy charge, however, meaning that McGowan's only role in the charges against Hawkins is whether his statements and phone calls supported the probable cause arrest of Hawkins.

A. **INEFFECTIVE ASSISTANCE OF COUNSEL**

Hawkins's ineffective assistance of counsel claims require the application of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). To prevail on an ineffective assistance of counsel claim in a § 2255 motion, a petitioner must prove (1) that their counsel's performance was deficient, and (2) that petitioner suffered prejudice due to that deficiency. *Id*. at 687. Deficient performance is shown only through proving "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. A showing of prejudice requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694-95. A petitioner must satisfy both prongs of the test, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. In his motion, Hawkins has raised numerous grounds to support his claim for ineffective assistance of counsel. The Court will address each of these arguments below.

    1. **Failure to Investigate and Challenge Police Conduct and Fourth Amendment Violation**

Hawkins claims his counsel was ineffective for failing to investigate and challenge law enforcement's conduct, including the Complaint affidavit, and the related alleged Fourth

Amendment violations. These claims are easily refuted by the record. Both Mr. Stephens and Mr. Lyons vigorously challenged the United States at every step of this prosecution as to both Hawkins's substantive guilt and potential constitutional violations.

As to the allegations in the Complaint affidavit that Hawkins claims are false or misstatements,[4] Mr. Stephens requested a preliminary hearing during which he cross-examined affiant Detective Jason Moore on the facts supporting probable cause for the Complaint. [DE 9 and 92 (Transcript)]. The Court found that there was probable cause to believe Hawkins committed the crimes alleged in the Complaint. [DE 9]. The fact that Mr. Stephens did not succeed in getting the Complaint dismissed does not constitute deficient performance.

"Though free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).

The true crux of Hawkins' § 2255 motion, and what is clear from the lengthy and emotional tone of his many filings in the case, is that he believes his Fourth Amendment rights were violated because there was no probable cause to arrest him. For example, Hawkins expresses his frustration with Mr. Lyons when he pointed out that Hawkins had "dope and a gun" on his person when he

---

[4] Hawkins generally claims that "police lied and fabricated the information that they presented to the courts to obtain the warrants and case against him." [DE 230 at Page ID # 1393].

was arrested, because "had not the police had the informant call me, without the benefit of probable cause, my crime would not have taken place."[5]  [DE 230 at Page ID # 1404].

There is, decidedly, no merit to Hawkins's Fourth Amendment-based ineffective assistance of counsel claim.  First, the officers did not need any probable cause to call Hawkins or surveil him in a public area.  The only legally cognizable challenge available to Hawkins was whether the officers had probable cause to effectuate a warrantless arrest.  The issue was presented to Judge Hood in a Motion to Suppress filed by Mr. Stephens, in the Reply brief filed by Mr. Lyons, and at the evidentiary hearing on the motion to suppress argued by Mr. Lyons.[6]  Judge Hood denied the motion to suppress, finding that there was probable cause Hawkins's warrantless arrest.  Correspondence int eh record between Hawkins and Mr. Lyons shows that Hawkins requested Mr. Lyons negotiate a conditional guilty plea that preserved his right to appeal the suppression decision.  [DE 226-2 at Page ID # 1337].  Mr. Lyons successfully obtained such a plea agreement for Hawkins.  Hawkins then presented his Fourth Amendment arguments to the Sixth Circuit Court of Appeals through his appointed appellate counsel.  The Sixth Circuit affirmed Judge Hood's denial of his suppression motion.

---

[5] The Court must point out that Hawkins, while framing himself as the victim of nefarious law enforcement officers and defective attorneys, misses an important point.  When McGowan called Hawkins and asked him if he wanted to engage in criminal activity, Hawkins could have said "no."  Instead, Hawkins appeared at the appointed place at the appointed time with a firearm in his hand and narcotics in his buttocks.  Both the district court and the Sixth Circuit have ruled that the events that followed did not result in a Fourth Amendment violation.

[6] Correspondence in the record between Mr. Stephens and Hawkins indicates Mr. Stephens was working with McGowan's counsel in the early stages of the case in hopes that a successful motion to suppress by McGowan would exclude the evidence that related to Hawkins.  [DE 230-1 at Page ID # 1519].  As Mr. Stephens explained to Hawkins, Hawkins did not have standing to make a motion related to violations of McGowan's Fourth Amendment rights, "thus Mr. McGowan and his counsel should take the lead on perfection of the motion."  [DE 230-1 at Page ID # 1519].  McGowan ultimately did not make such a motion; however, the letter is further indicia that that Hawkins's counsel was exploring many avenues to challenge Hawkins's warrantless arrest.  The Court considers this the antithesis of deficient performance.

The fact that both trial counsel and appellate counsel did not succeed on the Fourth Amendment challenge despite their fervent efforts speaks more to the merits of the challenge than to counsel's performance. "Counsel does not fall below this [*Strickland*] standard by failing to prevail when arguing a debatable point to the court." *Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009). *Strickland* does not require counsel to win every motion; *Strickland* bars representation that falls "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). The Court finds that counsel's performance as to any alleged law enforcement misconduct or Fourth Amendment violation was not deficient pursuant to *Strickland*.[7]

### 2. Failure to Obtain and Provide Discovery

Hawkins alleges that his counsel was ineffective regarding discovery. He argues counsel failed to obtain Robert McGowan's cellular records and failed to pass that discovery on to him for review. Hawkins's own statements belie his allegations, because he specifically references the details of McGowan's cellular records later in his motion, stating:

> Text records of this informant, "Banks," phone show months of narcotic sales, buys, meetings, and other dealings of illegal-activity. The one thing it "does not" show though is a text or any dealings of any kind with the defendants cellular device, ever.., [ellipsis in original] Prior to police having this newly arrested suspect text and call the defendant.
>
> [. . . ]
>
> It is very clear from the phone records of McGowan, text and call logs, that he knew countless persons capable of supplying him with a variety of narcotics [. . . ] And it is clear that the defendant had no prior dealing with this informant by proof of his text log, which surely indicated that "all" of his prior transactions were done by text.

[DE 230 at Page ID # 1417-18]. Clearly, Hawkins has seen McGowan's cellular records. However, according to Hawkins, he did not receive these records until after he was sentenced.

---

[7] The Court also notes that Hawkins's law enforcement misconduct and Fourth Amendment arguments fail the second prong of *Strickland* as well.

[DE 228 at Page ID # 1364]. Accepting this version of events, however, requires the Court to discount entirely Mr. Lyons's affidavit and supporting correspondence with Hawkins that evinces that not only did Mr. Lyons have the cellphone records, but he sent Hawkins McGowan's cellular records prior to the suppression hearing and his rearraignment. [DE 226-1 at Page ID # 1333; DE 226-3 at Page ID # 1339]. The Court is trying, with great effort, to understand the "supporting exhibits" that allegedly prove Hawkins' claims that he did not receive discovery, either because the United States did not provide it to the defense, or because Mr. Stephens and/or Mr. Lyons did not provide it to him. There are letters dated between June and September 2018, in which he requests discovery from Mr. Stephens, as well as pro se motions he filed during the pendency of his case that Judge Hood ruled upon. [DE 230-1]. The remainder of the exhibits on this point are essentially a restatement of arguments and a list of items Hawkins believes he should have received, without any proof these items even exist, much less were not provided to him. These items do not support any of Hawkins's factual allegations that he did not receive the discovery materials from the United States and/or his counsel until it was too late, failing to carry his burden under the first prong of *Strickland*.

Further, even if the Court accepts Hawkins's version of events (it does not), Hawkins has failed to prove the second prong of *Strickland*: that not receiving these discovery items resulted in prejudice to him. Hawkins argues that the records show "were exculpatory in proving that the defendant was not in contact with the informant prior to the charged offense, as claimed by the informant to the informant to give substance to his, McGowans [*sic*], claim of the defendant having supplied him with the narcotic which claimed the victims [*sic*] life[.]" [DE 230 at Page ID # 1389]. Hawkins's argument is critically flawed. Hawkins was not charged with a narcotics offense resulting in death, and the United States moved to dismiss the conspiracy charge that connected

10

Hawkins and McGowan on December 6, 2018, long before the suppression hearing or his rearraignment.

Hawkins further argues the cellphone records would have proved there was no prior contact between Hawkins and McGowan, thus proving there was "no probable cause to call the defendant and lure him into this crime." [DE 230 at Page ID 1390]. Whether or not defense counsel or Hawkins possessed McGowan's cellphone records, and what prior contact between the two those records would (or would not) have shown is immaterial. Law enforcement did not need probable cause to ask McGowan to contact Hawkins and set up a controlled purchase of drugs. Mr. Lyons was not deficient for failing to make such a frivolous legal argument at the suppression hearing. *United States v. Martin*, 45 Fed. App'x. 378, 381 (6th Cir. 2002) (stating counsel cannot provide deficient performance by failing to raise wholly meritless claims) (citing *Strickland v. Washington*, *supra* at 688). These grounds for relief fail to satisfy *Strickland* and should be denied.

### 3.    The § 924(c) Charge

Hawkins alleges that his counsel was ineffective for allowing him to plead guilty to possessing a firearm in furtherance of drug trafficking because there was not sufficient evidence that his possession of the gun was in furtherance of drug trafficking. Hawkins "argues that only coincidence links his possession of a firearm to the drug trafficking offense." [DE 230 at Page ID # 1407]. Hawkins argues that the United States had not established a sufficient nexus between the firearm he possessed and drug trafficking, which is an element of 18 U.S.C. § 924(c). The United States was not required to prove the elements of a § 924(c) charge in this case, however, because Hawkins chose to plead guilty. The only question is whether that plea was knowing and voluntary, and whether there was a sufficient factual basis in the plea agreement. As explained more fully below, the Court finds the plea was knowing and voluntary based on Hawkins' answers during the Rule 11 colloquy. The rearraignment transcript also refutes Hawkins's claims that he did not

11

understand or was unaware of the elements of the § 924(c) charge. The Court read his Indictment and the following factual basis from the plea agreement to him during this rearraignment, and Hawkins admitted to the conduct, under oath, as follows:

> THE COURT: "On or about May 10th, 2018, in Fayette County, in the Eastern District of Kentucky, Teddy S. Hawkins did knowingly and intentionally possess a firearm; that is, a Sig Sauer 9-millimeter P320 pistol, serial number 58 Bravo 227128, in furtherance of a drug trafficking crime [. . .]
>
> [. . .]
>
> "At that time Lexington Police officers on surveillance activated the emergency lights on their vehicles and approached the male that they identified as unc2. At that time, the male ran and tossed two cellular telephones and a handgun.
>
> "Once detained, the male identified himself as Teddy Hawkins, admitted that he had dope in the car, he had heroin inside his pants, and had thousands of dollars on his person, and that the handgun he had tossed was a Sig Sauer, and that he had purchased -- that he had purchased off the street.
>
> [. . .]
>
> "The firearm that Hawkins tossed was also recovered. It was a loaded Sig Sauer 9-millimeter P320 pistol, serial number 58 Bravo 227128 with a bullet in the chamber.
>
> Is that all true, Mr. Hawkins?
>
> DEFENDANT HAWKINS: Yes, sir.

[Rearraignment Transcript, DE 185 at Page ID 973-77].[8] Hawkins also confirmed to the Court, under oath that Mr. Lyons had explained the plea agreement to him. [Rearraignment Transcript, DE 185 at Page ID 965]. Even the Court cannot find any issue with the elements of the § 924(c) charge in the plea agreement or the factual basis, and Hawkins does not describe how his counsel

---

[8] Hawkins confuses "use" and "possession" at times in his § 2255 motion, and argues, in part, that he did not "use" a firearm in furtherance of a drug trafficking crime. However, Hawkins pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime. Obviously, his counsel had no duty with regards to a crime not at issue.

erred or what objection his counsel should have raised at the rearraignment, or how those supposed failures prejudiced Hawkins. Thus, this claim also fails both *Strickland* prongs.[9]

### 4. Failure to Object at Sentencing

Hawkins claims his sentence was procedurally unreasonable (and in his reply admits this claim is procedurally barred) and that Mr. Lyons provided ineffective assistance of counsel when he failed to object at his sentencing. [DE 230 at Page ID 1405]. Hawkins argues his counsel should have objected when the district judge referenced the death of the individual to whom McGowan sold narcotics, because there was no connection between Hawkins and that individual (and, in fact, the United States dismissed the conspiracy charge between the defendants). Hawkins's correctly reflects the statements the trial judge made at sentencing, which implied Hawkins may have had some responsibility indirectly for the overdose death. However, at sentencing, Hawkins's counsel vehemently argued to the Court (as did Hawkins, during his allocution) that he was not connected to the overdose death. In making his case for a downward variance at sentencing, Mr. Lyons stated:

> But this idea that somehow this is connected to the overdose death that led to this investigation is not part of his case. The government has not brought any charges against him. I presume that if they could have proved that Teddy was the source of supply for this drug overdose, they would have done so. The facts are that they could not do that because it wasn't the case.
>
> His codefendant who was responsible for the drug overdose got a period of ten years' incarceration and was personally responsible for that death. So the government's asking you for a sentence that is equivalent to the gentleman who walked into this courtroom and said yes, I caused an overdose death as a result of

---

[9] The Court notes Hawkins appears to be challenging the sufficiency of the evidence supporting his § 924(c) conviction but attempting to shoehorn that claim into an ineffective assistance of counsel claim to evade the procedural bars to the claim. There is nothing in the record to suggest the Court should consider the substance of this claim. First, Hawkins is barred by his plea agreement from bringing this claim. [DE 147 at Page ID # 803]. Second, he failed to raise the claim on direct appeal, which also constitutes a procedural bar. *See Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

>those drugs. I do think if the Court is not inclined to grant a variance, I would ask the Court then to sentence him within the applicable guideline range.

[Sentencing Transcript, DE 184 at Page ID # 950]. In its Sentencing Memorandum, the United States moved for an upward departure of fourteen months from the Sentencing Guidelines, for a total of 120 months imprisonment. Mr. Lyons prevailed. The Court, while making some statements regarding the overdose death, ultimately acknowledged Hawkins was not charged with the death and sentenced him to 106 months incarceration, which was within the Sentencing Guidelines range. Although Mr. Lyons did not object to the Court's statements at the moment they were made, he had already made the argument that the overdose death should not be considered in the sentence—an argument that apparently won the day over the United States' argument to the contrary. The Court finds that Mr. Lyons made a strategic choice in the moment not to interrupt the trial judge to reiterate an argument he had made only moments earlier. "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.). Thus, this claim fails the first *Strickland* prong. Further, the Court cannot see how Mr. Lyons's failure to object prejudiced Hawkins. Hawkins may not have received the sentence he would have preferred, but the Court sentenced Hawkins within the appliable range, not above it as the government requested.[10] This claim, therefore, fails the second *Strickland* prong as well.

---

[10] Hawkins appealed his sentence and the Sixth Circuit Court of Appeals affirmed it as procedurally reasonable. That Court held that the district court may consider uncharged conduct in crafting a sentence, thus, there was no error.

B.   **HAWKINS'S OTHER GROUNDS FOR RELIEF**

Hawkins's final arguments are that the (1) investigating law enforcement officers' misconduct, including violating his Fourth Amendment rights, (2) prosecutorial misconduct, and (3) that the Court imposed a procedurally unreasonable sentence. Hawkins waived his right to collaterally attack his guilty plea, conviction, and sentence in ¶ 8 of his plea agreement. [DE 147 at Page ID # 803]. All of Hawkins's remaining grounds for relief fall under a collateral attack of his conviction and sentence and were waived in his plea agreement. To the extent he attempts to frame these claims as ineffective assistance of counsel claims, the Court rejects the argument, as Hawkins has made ineffective assistance of counsel claims on these same topics, as addressed herein. "It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement. The sine qua non of a valid waiver is that the defendant enter into the agreement knowingly and voluntarily." *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001) (internal citations omitted). Hawkins does not argue that his guilty plea was not made knowing or voluntarily, or that he did not knowingly or voluntarily waive his rights therein, though he states his trial counsel pressured him into pleading guilty. [DE 230 at Page ID # 1387-88]. The transcript of his rearraignment reflects the Court provided an explanation the rights he was giving up in his plea agreement and Hawkins confirmed he understood, and that he had not been threatened or forced to enter into the plea agreement[11]:

---

[11] Hawkins argues that Mr. Lyons pressured him to plead guilty because Mr. Lyons was not prepared for trial and told him that if he did not plead guilty he could be sentenced to up to 30 years due to the 21 U.S.C. § 851 notice that had been filed Hawkins' case. There is no evidence Mr. Lyons was not prepared to go to trial; the record reflects he attended the final pretrial conference and discussed trial mechanics, filed motions in limine and proposed voir dire. [DE 125, 126, 141, and 144]. Further, Mr. Lyons' statement that the statutory maximum penalty was 30 years was an accurate statement of fact.

15

THE COURT: Did you have an ample opportunity to discuss the plea agreement with Mr. Lyons?

DEFENDANT HAWKINS: Yes.

THE COURT: Are you satisfied in your own mind that you understand all the terms of this plea agreement?

DEFENDANT HAWKINS: Yes, sir, pretty much, yes.

THE COURT: Pretty much?

DEFENDANT HAWKINS: I mean, yes, I understand what's going on.

THE COURT: Okay. Did anybody threaten you or attempt to force you to enter this plea agreement?

DEFENDANT HAWKINS: No.

[. . .]

MS. GREENFIELD [Counsel for the United States]: [. . .] And the plea agreement states that Mr. Hawkins is pleaing [sic] guilty to Count 3 and Count 5 of the superseding indictment, and this would be a conditional plea with the conditions expressed in paragraph 1, that he reserves his right to appeal the district court's denial of his pretrial motion to suppress. He may argue only that law enforcement officials had insufficient evidence to establish probable cause for a search incident to arrest. Only if he prevails on the appeal, the denial of his pretrial motion to suppress may he then withdraw his guilty plea.

[. . .]

In paragraph 8 deals with his limited right to appeal, as well as his agreement to waive his right to collaterally attack the guilty plea, conviction, and sentence.

[. . .]

MR. LYONS: That's an accurate description. Just note for the record that he has reserved his right to appeal, and as any criminal defendant he reserves his right to collaterally attack the guilty plea, conviction, and sentence on the basis of ineffective assistance of counsel?

THE COURT: He reserves his right to appeal the sentence?

MR. LYONS: The sentence only.

THE COURT: And then the collateral attack –

MR. LYONS: That's correct, Judge.

16

> THE COURT: -- based on ineffective assistance of counsel.
>
> MR. LYONS: That's correct.
>
> THE COURT: Okay. Is that your plea agreement, Mr. Hawkins?
>
> DEFENDANT HAWKINS: Yes, sir.

[Rearraignment Transcript, DE 185 at Page ID 965-69]. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy." *Id*. at 74. Any other conclusion presumes that Hawkins lied under oath to the Court at his rearraignment. The Court, applying this "strong presumption of [Hawkins's] veracity" during his plea colloquy, finds that Hawkins knowingly, intelligently, and voluntarily waived his right to collaterally attack his sentence.[12] Thus, his remaining grounds for relief must be dismissed as procedurally barred by his plea agreement.[13]

---

[12] The Court notes, once again, that Hawkins does not argue his plea or collateral appeal waiver was not knowingly or voluntarily made but conducts the analysis nonetheless out of an abundance of caution.

[13] Much of Hawkins's arguments for relief are some version of his Fourth Amendment challenge to his warrantless arrest. "[F]ree-standing Fourth Amendment claims cannot be raised in collateral proceedings[.]" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).

C.  **EVIDENTIARY HEARING UNNECESSARY**

Hawkins does not request a hearing on his § 2255 motion, and the Court finds that a hearing is unnecessary.[14] The Court must "grant a prompt hearing" on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Additionally, the Court must hold a hearing where the petitioner raises a factual dispute underlying his claims. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). Such is the case here. *See also* Rule 8(a) of the Rules Governing Section 2255 Cases in the United States District Courts (directing the Court to examine the filings and record "to determine whether an evidentiary hearing is warranted). The Court must hold a hearing where the petitioner raises a factual dispute underlying his claims, and "[t]he burden for establishing an entitlement to an evidentiary hearing is relatively light[.]" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). However, "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact[,]" no evidentiary hearing is required. *Id.* In this circumstance, Hawkins does not raise any factual claims requiring a hearing.

### III.  CONCLUSION

The Court finds that appointment of counsel is unnecessary in this case. The Sixth Amendment right to counsel does not apply to § 2255 proceedings. See Wright v. West, 505 U.S. 277, 293 (1992) (citing, among authorities, Pennsylvania v. Finley, 481 U.S. 551, 554 (1987)). In limited contexts, indigent defendants have a statutory right to counsel. See 28 U.S.C. § 2255(g)

---

[14] "The Defendant states that the government states that this case doesn't need an evidentiary hearing, and the defense agrees, but not for the same reasons the government state, [*sic*] but because the Defendant's claim contain [*sic*] a record created by the government[.]" [Reply, DE 228 at Page ID 1366].

("Appointment of counsel under [§ 2255] shall be governed by section 3006A of title 18"); see, e.g., U.S.C. § 3599(a)(2) (stating an indigent seeking to vacate or set aside a death sentence has a statutory right to appointed counsel). Those circumstances are not present in this case. Hawkins's many filings in the underlying criminal case and in pursuing his § 2255 motion indicate he is capable of pursuing this matter pro se.

For the reasons stated herein, the Court recommends the District Court deny Hawkins's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. As explained herein, none of his ineffective assistance claims satisfy the requirements of Strickland. If anything, the record reflects Hawkins received exemplary representation from both trial counsel appointed for him. His remaining claims are wholly without merit, procedurally barred, or both.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

19

In this case, reasonable jurists would not debate the denial of Hawkins's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court **RECOMMENDS** that the District Court **DENY** a certification of applicability.

### RECOMMENDATION

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **GRANT** Hawkins's Motion to Add Ground #7 to his § 2255 motion [DE 227];

2) the District Court **GRANT** Hawkins's Motion to Amend his Motion to Vacate [DE 230];

3) the Distict Court **DENY** Hawkins's request for counsel to be appointed;

4) the District Court **DENY** as moot his first § 2255 motion [DE 217];

5) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [DE 230]; and

6) the District Court **DENY** a Certificate of Appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 7th day of February, 2022.



20